*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TOMMIE PATTERSON, | ) | |
| | ) | Supreme Court No. S-15265 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-12087 CI |
| v. | ) | |
| | ) | O P I N I O N |
| GEICO GENERAL INSURANCE | ) | |
| COMPANY, | ) | No. 6994 – April 3, 2015 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Tommie Patterson, pro se, Anchorage, Appellant. Kimberlee A. Colbo, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I. INTRODUCTION

A driver injured in a hit-and-run accident sued his car insurance company, claiming it had breached his insurance contract by failing to reasonably compensate him for his injuries. He later moved to amend his complaint to include racketeering, embezzlement, mail fraud, and bad faith claims, but the superior court denied the motion.

A jury trial was held, and the jury returned a liability verdict that was smaller than the insurance company's offer of judgment. The superior court ruled that the insurance company was the prevailing party and awarded attorney's fees and costs. The driver appeals the denial of his motion to amend, the awarding of attorney's fees and costs, and several of the court's other procedural and evidentiary rulings. Because we see no abuse of discretion in the court's rulings, we affirm the judgment.

## II.    FACTS AND PROCEEDINGS

Tommie Patterson was injured in a hit-and-run accident in December 2009. The front driver's side door of Patterson's SUV was visibly damaged by the collision, and Patterson complained of neck and shoulder pain to an examining physician. At the time of the accident, Patterson held a GEICO General Insurance Company (GEICO) automobile insurance policy that contained a provision for uninsured motorist coverage.

Patterson and GEICO disputed the severity of Patterson's injuries sustained in the December accident. Patterson, initially represented by counsel, filed a complaint against GEICO alleging breach of the insurance contract. He claimed that he had "incurred medical expenses, travel expenses and general damages" for which "GEICO has refused to offer . . . a reasonable amount." In its answer, GEICO admitted that Patterson had a GEICO insurance policy, that he had reported a hit-and-run accident, and that he "may be entitled to some uninsured motorist benefits under [his] coverage." But GEICO also raised affirmative defenses, asserting that Patterson's "injuries . . . may be the result of a pre-existing or subsequently occurring condition," and that Patterson "is not entitled to recover medical expenses paid under his own Medical Payments Coverage."

Patterson's attorney moved to withdraw for cause. The attorney explained:

[Patterson] has refused to take my advice regarding resolution of this matter and I feel that I have done everything

I can to explain to him that even though he has [$1,000,000] worth of coverage, he does not have a [$1,000,000] case and I will not present that as an offer to settle.

Patterson consented to the attorney's withdrawal and notified the court that he intended to proceed pro se. He acknowledged that disagreements with his attorney over the available damages had led to the attorney's withdrawal.

GEICO moved for an order in limine to manage the case as a personal injury dispute, to prevent both parties from presenting evidence or arguments about Patterson's policy limits, and to notify Patterson that his medical records — including his medical history from before and after the accident — might be admissible. The superior court granted GEICO's motion.

Patterson then moved to amend his complaint to include new claims, alleging racketeering, embezzlement, mail fraud, and bad faith. He claimed that GEICO refused to honor its contract with him and was thereby committing " '[f]raud' by selling insurance policies[] knowing very well that the policies were not going to be honored." The court denied Patterson's motion to amend, finding it both untimely and futile. The court concluded: "Mr. Patterson makes no evidentiary showing to justify a late-filed [racketeering] claim. His pleadings reveal [a] lack of understanding about Geico's contract obligations. Amendment would be futile[.]"

At a pretrial status hearing, the court advised Patterson that he was not entitled to $1,000,000 for his injuries and suggested that he might be acting against his own interests by taking the case to trial. Patterson replied that he was only asking for a "fair" sum and that he was unwilling to settle for the amount GEICO had offered. GEICO's counsel informed the court that Patterson's offers of judgment were for $800,000 and $1,000,000, and he indicated that a jury trial remained necessary to resolve the parties' dispute.

In December GEICO perpetuated the testimony of its expert witness, Dr. Douglas Bald, by deposing him with Patterson present. Dr. Bald testified that, after reviewing Patterson's medical records, he believed the accident had caused "very minor muscular type injuries to [Patterson's] neck, upper back, [and] chest area" and that Patterson "had effectively recovered from the injuries . . . as of approximately January 12, 2010, which would be a little over a month post-accident." Dr. Bald also opined that many of Patterson's claimed injuries — most notably his lower back pain — were the result of preexisting conditions.

Patterson objected to Dr. Bald's qualifications, and on cross-examination he questioned Dr. Bald about four malpractice claims that had been filed against him over the course of his career. Dr. Bald acknowledged that he had settled a single, legitimate malpractice claim against him, but he testified that the remaining three claims had been dismissed. Patterson also suggested that there might have been errors in the medical records upon which Dr. Bald relied. Dr. Bald acknowledged that doctors occasionally fail to note reported symptoms in medical records. But he also testified that he had relied on multiple records and that December 2009 records consistently did not include references to Patterson's claimed lower back pain.

Fifteen days before the trial was set to begin, Patterson moved to disqualify the trial judge. Patterson argued that the judge was biased and prejudiced against him. The superior court denied the motion to disqualify and the matter was assigned to another superior court judge for review, as required by AS 22.20.020(c). The reviewing court found no basis for Patterson's claims.

During the week before trial, the superior court ordered a pretrial conference to determine whether Patterson was willing to follow the court's orders while in the presence of the jury. The court was concerned about statements in Patterson's trial brief asserting "a [F]irst [A]mendment right to speak and present all issues . . . on any

subject[] matter pertaining to Geico's embezzlement, fraud[], [and] refusal to honor [the] insurance policy[] limits of their contract." At the hearing the court reiterated that the case would be tried only as a personal injury dispute. The court also informed Patterson that it would dismiss the suit unless Patterson unambiguously agreed to follow the court's orders and limit his evidence and arguments to the only relevant issue: the severity of Patterson's accident-related injuries. Patterson eventually agreed, and the court ruled that his agreement was sufficient assurance to allow the trial to proceed.

The superior court held a jury trial. Patterson declined to testify, and chose to rely exclusively on his evidentiary exhibits and the videotaped deposition of Dr. Bald. During Patterson's opening statement, the court sustained multiple objections when Patterson attempted to discuss facts outside his exhibits and Dr. Bald's deposition. And when Patterson tried to tell the jury that there were subjects he had been instructed not to discuss, the court ordered him to stop talking and sit down. During GEICO's opening statement, Patterson objected when his prior medical history was mentioned, but the court overruled this objection.

Patterson then introduced and played Dr. Bald's videotaped deposition, which was edited to exclude portions the court had previously ruled inadmissible. Following the playback of the deposition and out of the jury's presence, Patterson rested his case, and GEICO moved for a directed verdict on Patterson's claim for future noneconomic damages. GEICO argued that the evidence Patterson presented — his medical records, which extended only through early 2010, and Dr. Bald's deposition testimony — provided no factual basis for these damages. The court granted GEICO's motion and noted that Patterson could have avoided this partial directed verdict by testifying.

The jury then returned for closing arguments. During Patterson's closing argument, the court sustained all seven of GEICO's objections — most of which were

for stating facts not in evidence — and ultimately ordered Patterson to end his argument before his time had expired.  During GEICO's closing argument, the court overruled Patterson's objection that GEICO should not have been permitted to recommend a specific pain and suffering award.  And throughout Patterson's rebuttal argument, the court sustained additional objections when Patterson expressed his disagreement with the court's evidentiary rulings, mentioned his insurance policy's $1,000,000 coverage limit, and suggested that the outcome of his case would personally affect the individual members of the jury.  After this final objection, the court again ordered Patterson to "have a seat."

The jury deliberated for less than two hours before returning a verdict finding GEICO liable for $5,000 in past noneconomic damages and $10,000 in past medical expenses.

Patterson moved for a new trial and relief from judgment under Alaska Civil Rules 59(d) and 60(b), alleging that his right to an impartial judge and jury had been violated.  The superior court denied Patterson's motion.

GEICO moved for a verdict reduction to reflect medical expenses already paid on Patterson's behalf, for entry of final judgment and recognition as the prevailing party, and for attorney's fees and costs under Alaska Civil Rule 68.  The superior court granted these motions.  The court subtracted $5,000 from the jury's verdict to reflect already-reimbursed medical expenses, added $1,386 for prejudgment interest, and deducted $6,742 for GEICO's attorney's fees and $3,087.25 for GEICO's costs.  The court issued a final net judgment of $1,556.75 in favor of Patterson.

Patterson appeals.

## III.   STANDARD OF REVIEW

We review the denial of a motion to amend a pleading for abuse of discretion.[1]  "It is within a trial court's discretion to deny such a motion where amendment would be futile because it advances a claim or defense that is legally insufficient on its face.  We use our independent judgment to review a conclusion that an amendment meets that description."[2]

"We review the rejection of a motion to disqualify for abuse of discretion."[3] We also review the superior court's application of the evidence rules — including the court's sua sponte rulings — for abuse of discretion.[4]  But "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."[5]  And unless the superior court committed plain error, we review evidentiary rulings only when a party preserves the issue through an objection or an offer of proof.[6]

"Constitutional issues are questions of law subject to independent review."[7] We also independently review jury instructions and special verdict forms.[8]  But before

---

[1]      *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 174 (Alaska 2010).

[2]      *Id.* at 174-75 (quoting *Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 287 (Alaska 2004)) (internal quotation marks omitted).

[3]      *Wasserman v. Bartholomew*, 38 P.3d 1162, 1170 (Alaska 2002).

[4]      *See Vachon v. Pugliese*, 931 P.2d 371, 381 (Alaska 1996).

[5]      Alaska R. Evid. 103(a).

[6]      Alaska R. Evid. 103(a), (d).

[7]      *Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 995 (Alaska 2011) (citing *Eagle v. State, Dep't of Revenue*, 153 P.3d 976, 978 (Alaska 2007)).

[8]      *Sowinski v. Walker*, 198 P.3d 1134, 1160 (Alaska 2008) (citing *Cummins,*
(continued...)

we will "overturn a jury instruction or special verdict form, we must conclude not only that the instruction or special verdict form was legally erroneous, but also that the verdict would probably have been different but for the error."[9] "Questions concerning an offer of judgment's meaning and whether the offer complies with Rule 68 raise issues of law, which we review independently."[10]

## IV. DISCUSSION

Patterson does not contest the jury's factual findings that he suffered $5,000 in past noneconomic damages and $10,000 in medical expenses. Instead, he claims that the superior court abused its discretion and violated his constitutional rights by ruling against him on various motions throughout the proceedings. We review each of Patterson's arguments in turn.[11]

### A. The Superior Court Did Not Abuse Its Discretion By Denying Patterson's Motion To Amend His Complaint.

Patterson argues that the superior court should have allowed him to amend his complaint to include racketeering, embezzlement, mail fraud, and bad faith claims.

---

[8](...continued)
*Inc. v. Nelson*, 115 P.3d 536, 541 (Alaska 2005)).

[9]     *Id.* (citing *Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, 25 (Alaska 2002)).

[10]     *Jackman v. Jewel Lake Villa One*, 170 P.3d 173, 177 (Alaska 2007).

[11]     In addition to the arguments discussed below, Patterson claims the superior court abused its discretion by denying his motion for a new trial in light of his allegation that several jurors lied during voir dire. But it was reasonable for the court to deny this motion, because Patterson's jury misconduct allegation was conclusory and lacked evidentiary support. Although Patterson presents this court with documents that he claims reveal inaccuracies in several jurors' statements, the documents were never presented to the superior court, have not been authenticated, and are not included in the record. We therefore decline to consider them.

Patterson contends that the superior court, by denying his motion to amend, abused its discretion under Alaska Civil Rule 15.

Under Rule 15, if a responsive pleading has been served and the action has been set for trial, a party may amend his pleading "only by leave of court or by written consent of the adverse party." But "leave shall be freely given when justice so requires."[12] In deciding whether the superior court has abused its discretion by denying a motion to amend, we balance "the possible prejudice to [the nonmoving party] in defending [the new] claims with the potential harm caused to [the moving party] if he is precluded from litigating these issues."[13] We have recognized several reasons to uphold such a denial, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."[14] But even an unreasonable delay in moving to amend pleadings does not justify denying the motion absent prejudice to the nonmoving party.[15]

Here the superior court gave two reasons for denying Patterson's motion to amend his complaint: untimeliness and futility. The court noted that, at the time of the motion, the trial was "set to occur in two months." The court also concluded that Patterson made "no evidentiary showing to justify a late-filed [racketeering] claim. His pleadings reveal [a] lack of understanding about Geico's contract obligations." At a status hearing held soon after the denial of the motion, the court elaborated further:

---

[12]    Alaska R. Civ. P. 15.

[13]    *Miller v. Safeway, Inc.*, 102 P.3d 282, 288 (Alaska 2004).

[14]    *Id.* at 294 (quoting *Betz v. Chena Hot Springs Grp.*, 742 P.2d 1346, 1348 (Alaska 1987)) (internal quotation marks omitted).

[15]    *Id.*

I denied [your motion] because you didn't show me any . . . color[able] basis. . . . You had to show me that GEICO did something that was legally unreasonable that would amount to bad faith. You had to show me some evidence of that, and . . . you did not[.] . . . [T]he essence of your beef was that GEICO wasn't paying you an astronomical amount of money. . . .

. . . [T]here's no evidence you've presented or argument . . . in your motion that can tell me . . . what [you're] saying they did wrong. . . . [I]f I look at it and I say, "The gentleman doesn't understand the law [and] there's no way a jury can get there based on what he says," I'm going to deny that amendment to you or anybody else.

We do not need to determine whether the superior court's untimeliness finding was erroneous, or whether that finding was sufficient to justify the denial of Patterson's motion to amend. The futility of Patterson's proposed claims provides an independent basis for denying the motion.[16] Patterson presented no factual allegations that could support his new claims, which were all predicated on his apparent understanding that GEICO was required to pay him his $1,000,000 policy limit in the event of an accident. Patterson claimed at a pre-trial hearing that the superior court misinterpreted the legal theory behind his proposed claims, but he provided no

---

[16] *See Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 177 (Alaska 2010) ("We consider with independent judgment whether a proposed amended complaint could survive dismissal; if we conclude that it could not, we will hold that the superior court did not abuse its discretion by denying the motion for leave to amend."); *see also Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 283, 287-88 (Alaska 2004) (affirming denial of motion to amend because amended complaint's claims were preempted by federal law); *Taylor v. Johnson*, 985 P.2d 460, 464-66 (Alaska 1999) (affirming denial of motion to amend where plaintiff could not establish a tort claim).

alternative legal or factual grounds to support these claims.[17]  Most importantly, Patterson at no point alleged that his medical costs or pain and suffering damages approached a sum anywhere near the $800,000 and $1,000,000 settlement offers he made to GEICO.

Because we agree with the superior court that Patterson's proposed new claims were futile, we conclude that the court did not abuse its discretion by denying Patterson's motion to amend.

## B.    The Reviewing Court Did Not Abuse Its Discretion By Denying Patterson's Motion To Disqualify The Trial Judge.

About two weeks before the trial was originally set to begin, Patterson moved to disqualify the trial judge.  Patterson supported his motion for disqualification by noting that the judge had granted summary judgment against him in a separate case and had ruled against him on evidentiary motions in the present dispute.  Patterson further alleged a wide-ranging conspiracy of trial fixing and attempted murder carried out by the judge, GEICO, five other judges, and three other companies.

The superior court denied Patterson's motion, and the matter was assigned to another superior court judge for review.[18]  The reviewing court affirmed the denial of Patterson's motion, concluding that there was no evidence of bias or prejudice in the trial judge's evidentiary rulings nor "any basis for Mr. Patterson's multiple judge conspiracy theories."  The court noted that "[g]eneral dissatisfaction with a judge's ruling is not a

---

[17]    Immediately after Patterson claimed he was not asking GEICO for $1,000,000, GEICO's attorney informed the court that, before the hearing, Patterson had made "an offer of judgment for $800,000. . . .  It was $1,000,000 before, but now it's $800,000."  Patterson did not contest this characterization of his settlement offers.

[18]    *See* AS 22.20.020(c) ("If a judicial officer denies disqualification the question shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts . . . .").

ground for recusal or disqualification. . . . Similarly, personal bias or prejudice does not exist simply because a judge previously presided over a case involving the same party."

Patterson argues that the denial of his motion to disqualify the trial judge was an abuse of discretion. He supports this argument with a number of claims, some of which he asserts for the first time on appeal.[19] We review previously unraised issues only for plain error, which "exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[20] Because we perceive no plain error,[21] we limit our review to Patterson's original claims.

The reviewing court did not abuse its discretion by denying Patterson's motion to disqualify. "There is no rule *requiring* recusal or disqualification of a judge

---

[19] Specifically, Patterson claims for the first time on appeal that the trial judge was biased against African-American men, was prejudiced against pro se litigants, acted as an "advocate" for GEICO, and engaged in ex parte communications with GEICO's attorney.

[20] *See Swaney v. Granger*, 297 P.3d 132, 136 (Alaska 2013) (quoting *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 436 (Alaska 2012)) (internal quotation marks omitted).

[21] Patterson's new claims are both overstated and unsubstantiated. For instance, Patterson alleges that the trial judge called him a "dog" and spoke to him with "anger and hat[red] in his voice." But the trial judge did not call Patterson a dog; he merely used a variant of the idiom "barking up the wrong tree." And the courtroom audio recordings contain no evidence that the judge spoke menacingly to Patterson. Patterson also contends that the trial judge engaged in "ex parte communications" with GEICO. This contention appears to stem from a statement the judge made to GEICO's attorney off the record *but in Patterson's presence*. By definition, therefore, the statement was not an ex parte communication. *See* BLACK'S LAW DICTIONARY 316 (9th ed. 2009) (defining "ex parte communication" as "[a] communication between counsel and the court when opposing counsel is not present"). Patterson further asserts that the trial judge has "a history of out of court ex[] parte communications," but he points to no evidence in the record to back this allegation.

who previously has presided over a case involving the party seeking disqualification or recusal."[22]  And we have held that "[t]o succeed on a motion to disqualify a judge for bias, the movant must show that the judge's actions were the result of personal bias developed from a nonjudicial source."[23]  We see no evidence of bias in the trial judge's evidentiary rulings, and Patterson has provided no evidence to substantiate his conspiracy claim.  We therefore affirm the denial of Patterson's motion to disqualify the trial judge.

## C.  The Superior Court Did Not Abuse Its Discretion By Overruling Patterson's Objections To Dr. Bald's Deposition Testimony.

Patterson contends that the superior court abused its discretion by overruling some of his objections during the deposition of Dr. Bald.  Patterson claims that one of GEICO attorney's coached Dr. Bald's testimony, creating unfair prejudice.  He also claims that Dr. Bald's testimony contained false statements that another GIECO attorney knowingly introduced to the jury over his objection.[24]

### 1.  It was not unreasonable for the superior court to overrule Patterson's witness-coaching objections.

To support his claim that portions of Dr. Bald's deposition should have been excluded due to witness coaching, Patterson asserts that GEICO's attorney instructed Dr. Bald to lie at two separate points in the deposition.  We disagree with

---

[22]    *Pride v. Harris*, 882 P.2d 381, 385 (Alaska 1994) (emphasis in original).

[23]    *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (quoting *Nelson v. Jones*, 781 P.2d 964, 972 (Alaska 1989)) (internal quotation marks omitted).

[24]    Patterson also alleges other forms of professional misconduct on the part of GEICO's attorneys, including (1) representing Patterson without permission and (2) improperly and prejudicially substituting counsel.  He raises these claims for the first time on appeal; because we perceive no plain error, they are waived.

Patterson's characterization of the attorney's statements and conclude that the superior court's decision to overrule Patterson's objections was reasonable.

The first statement that Patterson characterizes as witness coaching occurred as GEICO's attorney questioned Dr. Bald about the extent of Patterson's injuries on the night of the accident. The attorney appeared surprised by one of Dr. Bald's answers, and he repeated Dr. Bald's testimony. While this statement was technically objectionable because it was not in the form of a question, Patterson fails to explain how it amounts to improper witness coaching. He also fails to explain how he was prejudiced by it.

The second statement that Patterson cites arose only after *Patterson* instructed Dr. Bald on how to answer a question. When Dr. Bald rejected the premise of Patterson's question and began to explain why he could not answer it, Patterson told him: "I asked you a question. All you got to do is answer yes or no. . . . I don't want you . . . to explain it. . . . All you got to say is 'yes' or 'no.' " In response to Patterson's incorrect instruction, GEICO's attorney stated that Dr. Bald did "not need to *just* answer 'yes' or 'no' " if he had more to say. (Emphasis added.) The attorney was making a legal argument against Patterson's instruction and was not advising Dr. Bald to provide any particular answer. Therefore the superior court did not abuse its discretion when it overruled Patterson's improper witness coaching objection.

### 2. It was not unreasonable for the superior court to overrule Patterson's false-statement objections.

Patterson also argues that the superior court should not have admitted a separate portion of Dr. Bald's testimony because it contained false statements.

Moreover, he accuses another GEICO attorney of introducing the testimony knowing that the statement was false.[25]

Patterson's criticism of the deposition testimony focuses on two of Dr. Bald's assertions:  first, that "[t]here was no reference by the EMTs [in the Anchorage Fire Department Prehospital Care Report] that Mr. Patterson was complaining of any lower back pain," and second, that "[Patterson] was complaining of[] left shoulder pain and neck pain primarily on the left side. . . . [Patterson] specifically noted that there were no other injuries."  Patterson argues that these statements were inconsistent with the emergency room report from the night of the accident, which noted that one of Patterson's chief complaints was "pain in neck and back."  We disagree.

Dr. Bald's interpretation of the emergency room report appears at least as reasonable as Patterson's.  The section of the report that provides a detailed description of Patterson's symptoms contains no mention of lower back pain:  "[Patterson] now has pain in his left shoulder which he has had chronically but is worse now, worse to movement.  He also has pain in his neck, mostly on the left side as well.  No one else was in the vehicle with him.  *He denies any other injury*."  (Emphasis added.)  Thus the back pain mentioned in the report, when read in the context of the entire document, probably refers to shoulder pain, not lower back pain.  But regardless of whose interpretation is correct, Patterson has not demonstrated that Dr. Bald knowingly made a false statement at his deposition, because the document *can* be read to support the doctor's interpretation.  As a result, Patterson has likewise failed to show that GEICO's attorney offered evidence she knew to be false.

---

[25]  *See* Alaska R. Prof. Conduct 3.3(a) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal . . . or . . . offer evidence that the lawyer knows to be false.").

For these reasons, we conclude that the superior court's admission of this deposition testimony was not an abuse of discretion.

**D.    The Superior Court Did Not Violate Patterson's Free Speech And Due Process Rights By Preventing Him From Discussing Subjects Outside The Scope Of The Admissible Evidence.**

During Patterson's opening statement and closing arguments to the jury, the superior court repeatedly sustained GEICO's objections, made its own sua sponte rulings, and ultimately ordered Patterson to conclude his opening statement and closing arguments before his time had expired. Patterson argues that these restrictions on his statements violated his constitutional free speech and due process rights.

Patterson's free speech argument is entirely without merit. The U.S. Supreme Court has indicated that free speech rights are severely limited in the courtroom: "It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal."[26] And we have held that "speech that affects the judicial process can be limited."[27] The courtroom is not a public forum,[28] and sustaining an objection does not violate a litigant's free speech right.

---

[26]    *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991).

[27]    *Turney v. State*, 936 P.2d 533, 541 (Alaska 1997) (citing *Marks v. City of Anchorage*, 500 P.2d 644, 647 (Alaska 1972)) (rejecting First Amendment claim by private citizen advocating within courthouse for jury nullification).

[28]    *See Zal v. Steppe*, 968 F.2d 924, 932 (9th Cir. 1992) ("Traditional First Amendment analysis also supports the idea that lawyers (and others) have no First Amendment right to speak freely in a courtroom: a courtroom is not a public forum . . . .").

Patterson's due process claim, however, warrants more detailed discussion. We interpret this claim as an argument that Patterson's substantial rights were violated when the superior court ruled against him on evidentiary matters.[29] But under Alaska Evidence Rule 611(a), a trial court has wide discretion "to control the presentation of evidence so as 'to make the interrogation and presentation effective for the ascertainment of truth.' "[30] Patterson's due process claim can have no merit if Patterson cannot even show that the court's evidentiary rulings were unfair or unreasonable, and we see no abuse of discretion in these rulings.

Nearly every sustained objection was intended to prevent Patterson from discussing facts not in evidence or from making irrelevant and potentially prejudicial arguments about topics the court had explicitly ordered him not to discuss. Patterson repeatedly refused to abide by the superior court's order barring him from introducing details about his insurance policy to the jury. He tried to talk about the insurance claim process. He obliquely implied that he had car insurance while pulling an object — possibly his insurance card — out of his wallet to show to the jury. He attempted to discuss his insurance coverage limits. And he referenced his rejected insurance fraud claim. The superior court was well within its discretion to limit Patterson's statements on these matters.

The superior court also prevented Patterson from arguing that Dr. Bald and Patterson's treating physicians had been sued in the past for medical malpractice. The court stopped Patterson when he began referencing multiple medical malpractice claims brought against Dr. Bald as if they were all factually supported. The court's action was

---

[29]   *See* Alaska R. Evid. 103(a).

[30]   *Vachon v. Pugliese*, 931 P.2d 371, 381 (Alaska 1996) (quoting 1 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 55, at 225 n.21 (4th ed. 1992)).

reasonable because Patterson was mischaracterizing the evidence to the jury. Dr. Bald admitted in his deposition that he had been liable for *one* instance of medical malpractice during his career. But he also testified that the three remaining claims had been dismissed, and Patterson presented no admissible evidence to contradict this testimony. Likewise, Patterson presented no admissible evidence to support his insinuation that his own doctors had committed malpractice. The court properly excluded all of Patterson's proposed exhibits pertaining to malpractice allegations, because the documents were hearsay and could not be authenticated.[31] The superior court did not abuse its discretion by requiring Patterson to discuss only facts that were supported by the evidence before the jury.

And the superior court acted reasonably by ordering Patterson to end his opening statement and closing arguments before his time had expired. Before ordering Patterson to finish speaking during his opening statement, the court gave Patterson many opportunities to correct his approach, advising him five times to focus his statement on the only relevant issue: the extent of his injuries as described by the admissible evidence. Despite these instructions, Patterson's narrative continued to exceed the scope of his evidence, and he ultimately suggested that the jury should consider inadmissible issues: "this matter is not all about [an] injury; it's about more that is not going to be brought out." By this point, it was not unreasonable for the court to conclude that Patterson had nothing else relevant to say.

The court's decision to prematurely end Patterson's closing argument was similarly reasonable. During his argument, Patterson again ignored the court's instructions to avoid discussing his insurance details and to focus on relevant facts.

---

[31] See Alaska R. Evid. 802 (hearsay rule), 901 (authentication requirement).

Moreover, the court ordered Patterson to finish his closing argument only after Patterson attempted to improperly personalize the verdict to the jury:[32]

> Ladies and gentlemen, what I'm trying to say is [that] GEICO . . . is hoping and trying to get not only you but me to take a knife and put it around your neck and pull it, because the decision that is made today is going to affect you, your kids, and anybody else that drive[s] out there on that road because they honestly don't have to honor their contract.

Likewise, the court ordered Patterson to finish his rebuttal argument only after he returned again to this improper theme:

> All I'm asking you all to do is go back to that [deliberation] room and do the right thing. Do the right thing. [GEICO] wants you to do something that['s] going to [affect] not only you, me, and everybody else. This opinion's going to be all over the country. . . . This gives insurance companies a chance to lowball you for your claims. That's what that's about.

The superior court had a duty to ensure that the trial was fair to GEICO as well as Patterson. The court took reasonable action to control the proceedings and prevent Patterson from introducing irrelevant facts and prejudicial arguments to the jury. The court did not abuse its discretion by limiting Patterson's statements to the relevant evidence. And by providing Patterson with ample opportunity to speak to the jury about the relevant evidence, the court ensured that Patterson received the process he was due.[33]

---

[32]     *Cf. State v. Raspberry*, 452 S.W.2d 169, 172 (Mo. 1970) (rejecting as improper an argument that jury should return guilty verdict "for the sake of your children, . . . for your wives, . . . for your families, [and] for the sake of the people of the community").

[33]     Patterson also argues that the court violated his confrontation and due process rights by denying his request to examine Dr. Bald telephonically at trial, and he accuses one of GEICO's attorneys of making a false statement to this court by

(continued...)

**E.     The Superior Court Did Not Abuse Its Discretion By Omitting Portions Of Dr. Bald's Deposition When It Was Played To The Jury.**

The superior court sustained objections to six segments of Dr. Bald's deposition. Patterson argues that the court abused its discretion by omitting these segments when the deposition was played to the jury. We disagree.

None of the six segments contained testimony that was relevant to the jury's deliberations. One segment pertained to the discoverability of Dr. Bald's tax documents. Three segments contained Patterson's argumentative and unsubstantiated accusations that Dr. Bald had previously committed multiple instances of medical malpractice and was lying to Patterson about them. Another segment pertained to past malpractice claims that had previously been brought against Patterson's treating physicians; Dr. Bald had no personal knowledge about the doctors or the claims. And the final segment consisted of a legal discussion between Patterson and GEICO's attorney, followed by a series of questions about the misconduct of a *different* Dr. Bald. Because these portions of the deposition were irrelevant to the issues at trial, the court reasonably omitted them.

**F.     The Trial Court Did Not Err By Overruling Patterson's Objections During GEICO's Opening Statement And Closing Argument.**

Patterson argues that GEICO made unfairly prejudicial remarks in its opening statement and closing argument. He claims GEICO violated a superior court

---

[33](...continued)
mischaracterizing Confrontation Clause doctrine. But the Confrontation Clause does not apply to civil proceedings, and GEICO's attorney's statement to that effect was both accurate and proper. *See* U.S. CONST. amend. VI ("*In all criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (emphasis added)). And the superior court generally does not have subpoena power to require out-of-state witnesses to appear. *See* Alaska R. Civ. P. 45(e) ("A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place *within the state*." (emphasis added)).

order by raising his prior medical history and by suggesting a specific amount for pain and suffering damages. Patterson also contends that GEICO's closing argument included a "golden rule" argument, a disclosure of the "ad damnum," and improper personal opinions.

During opening statements, GEICO's attorney told the jury:

[Y]ou will see from the medical records that . . . Mr. Patterson has a history of prior neck problems, prior left shoulder problems, prior knee problems. He also has a history of prior low back issues. You will see . . . that in the month after this accident, his complaints were all about his neck and his shoulder, that there [were] no specific complaints about his low back or examination or diagnosis regarding his low back until about a month and a half after this accident occurred . . . . GEICO's position in this case will be that he did not sustain a low back injury.

And during closing arguments, GEICO's attorney stated:

[I]f you look through the records and you add up the medical expenses for December 2009, excluding . . . three items of treatment [that GEICO believes were unrelated to the car accident], the medical expenses total $6,354.61, and that's what we'd ask that you award Mr. Patterson for past medical expenses.

For past general damages, this is typically a difficult area for juries to . . . [grasp], because what the court will tell you is . . . there's no formula for figuring out what to award somebody for pain and suffering. And in some respects your job is more difficult here because you have no [testimonial] evidence . . . to base an award on. All you have is what's in the medical record. . . . So in the absence of . . . testimony, we'd respectfully submit to you that, at most, what you can award is a nominal amount for past pain and suffering, and that's it because that's all the evidence supports in this case. And we'd suggest an award [of] $500 [to] $1,000 for that month of some pain.

Patterson's claim that GEICO violated a court order by discussing his medical history is without merit. In the court order Patterson references, the superior court explicitly noted that Patterson's medical records could be relevant for determining whether his injuries stemmed from the accident, from preexisting conditions, or from some combination of both. GEICO's attorney discussed Patterson's medical history for exactly this purpose.

Patterson's argument that GEICO violated an order to avoid suggesting a specific damages award is similarly meritless. Although the court ordered both parties not to discuss the details of Patterson's insurance policy — including its coverage limits — GEICO remained free to suggest a damages figure to the jury based on the evidence at trial.

We also reject Patterson's claim that GEICO made an improper "golden rule" argument. Golden rule arguments "implore[] the jurors to put themselves in the position of [a party], and then to ask themselves what kind of outcome they would wish under the circumstances."[34] Although we have held that golden rule arguments are prejudicial and should be excluded,[35] GEICO made no such argument in its opening and closing statements.

Patterson's "ad damnum" argument seems to refer to GEICO's suggestion that the jury award $500 or $1,000 for pain and suffering. An "ad damnum" is an

---

[34] *Beaumaster v. Crandall*, 576 P.2d 988, 994 (Alaska 1978).

[35] *Id.* (citing *Mallonee v. Finch*, 413 P.2d 159, 164 (Alaska 1966)).

antiquated term for the total damages claimed in a plaintiff's pleadings.[36] But Patterson's complaint did not include an ad damnum figure, so this argument is without merit.

Finally, we reject Patterson's claim that GEICO's attorney expressed an improper personal opinion. The personal opinion objection is typically found in criminal cases, when a "prosecutor . . . assert[s] personal opinion[s] about the culpability of the defendant."[37] The U.S. Supreme Court has explained that such arguments are prejudicial because they "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant."[38] This can be particularly prejudicial because "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."[39] But the prohibition against personal opinions does not prevent an attorney from arguing the evidence from a client's position. Here GEICO's attorney merely summarized the evidence and argued for GEICO's preferred legal outcome. This was entirely proper, and the court did not abuse its discretion by allowing GEICO to argue its case.

G.    The Superior Court Did Not Misinstruct The Jury.

Patterson argues that the superior court misinstructed the jury by referring to Dr. Bald as an "examining physician" early in the trial and by drafting an incorrect special verdict form. We will overturn a jury instruction or special verdict form only if

---

[36]    *See, e.g., Jackson v. Leu-Pierre*, 296 A.2d 902, 903 (N.H. 1972) ("The plaintiff's original writ . . . contained an ad damnum in the amount of $12,000.00. By motion granted by agreement . . . , this was increased to $13,500.00 due to the addition of a claim for property damage.").

[37]    *See Noel v. State*, 754 P.2d 280, 283 (Alaska App. 1988).

[38]    *United States v. Young*, 470 U.S. 1, 18 (1985).

[39]    *Id.* at 18-19.

we conclude both "that the instruction or special verdict form was legally erroneous" and "that the verdict would probably have been different but for the error."[40]

Patterson correctly notes that the superior court erroneously referred to Dr. Bald as "a physician who examined Mr. Patterson" while providing the jury with an overview of the evidence they would hear at trial. But Patterson quickly brought this error to the court's attention, and the court addressed the mistake with the jury:

> I want to correct a misstatement I made . . . . I said that Dr. Bald was . . . an examining physician. It turns out I'm wrong. . . . He's a defense expert. However, he did not conduct an examination of Mr. Patterson. He merely conducted what we call a records review but not a physical examination. So I wanted to correct any misimpression.

Patterson did not object to this subsequent characterization of Dr. Bald's role. Moreover, GEICO reiterated during its opening statement that "Dr. Bald conducted what's called a records review. He reviewed Mr. Patterson's records. *He did not examine Mr. Patterson*." (Emphasis added.) These clarifications, along with the playback of Dr. Bald's deposition to the jury, clearly and accurately described Dr. Bald's role, and Patterson has not presented any evidence that he was prejudiced by the court's initial misstatement.

Patterson also argues that the superior court erred by crafting a special verdict form based on GEICO's proposed form, not his. But there were only three material differences between the court's special verdict form and Patterson's proposed form: (1) the court's form asked the jury whether it was "more likely true than not" that Patterson was injured by the December 2009 accident; (2) Patterson's form incorrectly stated that "GEICO [was] obligated to pay to Plaintiff the applicable policy limit . . .

---

**40**    *Sowinski v. Walker*, 198 P.3d 1134, 1160 (Alaska 2008) (citing *Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, 25 (Alaska 2002)).

spelled out in the contract"; and (3) Patterson's form contained a reference to "bad faith damages."

Patterson is correct that, in the absence of further instruction, asking the jury to evaluate whether he had been injured in the accident might have been prejudicial in light of GEICO's admission that he sustained at least minor injuries. Nevertheless, both the superior court and GEICO informed the jury that this issue was not contested and that the jury was required to find that the car accident resulted in personal injury to Patterson. Because the jury followed this instruction, Patterson suffered no prejudice.

Patterson's remaining complaints about the court's special verdict form are entirely without merit. Neither Patterson's policy limit nor his proposed bad faith claim were relevant to the jury's deliberations, and referencing either item on the special verdict form would have caused unfair prejudice to GEICO.

For these reasons, we conclude that the superior court did not misinstruct the jury.

## H. The Superior Court Did Not Err By Adjusting The Judgment Or Awarding Attorney's Fees And Costs To GEICO.

Patterson argues that the superior court erred by adjusting the final judgment by $5,000 to account for medical expenses that GEICO had already paid. He also argues that the superior court erred by granting GEICO's request for attorney's fees and costs.

Patterson claims that, by deducting $5,000 from the jury verdict, the superior court erroneously ordered him to "pay GEICO back" for the medical expenses he incurred. This is incorrect. The unadjusted jury verdict covered *all* of Patterson's damages, and the court's adjustment reflected GEICO's past compensation to Patterson in the form of paid medical expenses. Indeed, had the court failed to make this adjustment, Patterson would have received a double recovery.

We also conclude that the superior court did not err by declaring GEICO the prevailing party and granting GEICO's request for attorney's fees and costs. Under Alaska Civil Rule 68, if a party serves an offer of judgment "more than 10 days before the trial begins" and the final judgment "is at least 5 percent less favorable to the offeree than the offer, . . . the offeree . . . shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror from the date the offer was made." Rule 68(b)(2), which is applicable here, provides that "if the offer was served more than 60 days after the date established in the pretrial order for initial disclosures . . . but more than 90 days before the trial began, the offeree shall pay 50 percent of the offeror's reasonable actual attorney's fees."

GEICO presented Patterson a valid offer of judgment for $15,001 plus prejudgment interest, "*in addition to* the $5,000.00 in auto medical payments benefits previously paid by Geico on plaintiff's behalf." (Emphasis added.) The superior court, after deducting $5,000 for GEICO's past medical payments from the jury verdict and adding $1,386 in prejudgment interest,[41] determined that the final judgment for Patterson was $11,386. Because this amount was more than five percent smaller than the $15,001 plus interest that GEICO had previously offered Patterson, the court concluded that GEICO was the prevailing party and was therefore entitled to attorney's fees and costs under Rule 68. GEICO reported that it had incurred $3,087.25 in costs, and that it was

---

[41] Patterson argues that the proper interest rate should have been 8%, not the 3.75% the court used. But it is unclear where Patterson obtained this figure, since the statute he cites, AS 45.45.010(a), is not only irrelevant but references an interest rate of 10.5%. Regardless, the correct interest rate under AS 09.30.070 was 3.75% — that is, 3% more than the .75% U.S. Federal Reserve discount rate in effect on January 2, 2013. *See* U.S. FED. RESERVE, DISCOUNT AND ADVANCE RATES: NOVEMBER 19 AND DECEMBER 10, 2012, at 2 (2012), *available at* http://www.federalreserve.gov/newsevents/press/monetary/monetary20130108a.pdf.

eligible for a $6,742 attorney's fees award under Rule 68(b)(2). The court subtracted these expenses from Patterson's final judgment amount, which resulted in a net final judgment of $1,556.75 in favor of Patterson. We see no error in the court's calculations.

## V.    CONCLUSION

We AFFIRM the judgment of the superior court in all respects.