NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PAMELA L. BICKFORD, DAVID H. JOHNSON, and LOY A. THURMAN, | ) ) ) | Supreme Court No. S-18776 |
| Appellants, | ) ) ) | Superior Court No. 3AN-22-09328 CI |
| v. | ) ) ) | MEMORANDUM OPINION AND JUDGMENT* |
| STATE OF ALASKA, DIVISION OF ELECTIONS, NANCY DAHLSTROM, in an official capacity as LIEUTENANT GOVERNOR, CAROL BEECHER, in an official capacity as DIRECTOR OF ELECTIONS, TREG TAYLOR, in an official capacity as ATTORNEY GENERAL, and MICHAEL J. DUNLEAVY, in an official capacity as GOVERNOR, and THOMAS W. OELS, and WILLIAM C. de SCHWEINITZ, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2065 – January 2, 2025 |
| Appellees. | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Pamela L. Bickford, pro se, Anchorage, David H. Johnson, pro se, Wasilla, and Loy A. Thurman, pro se, Wasilla, Appellants. Thomas S. Flynn, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellees.

---

\* Entered under Alaska Appellate Rule 214.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

Citizens filed a complaint with the Division of Elections in late 2022, alleging various violations of state and federal law in the November 2020 general election. The Division sought clarification, then rejected the complaint on grounds that it failed to satisfy regulatory requirements.

The citizens then filed a complaint in superior court, contending that various state officials and entities acted unlawfully by complying with judicial orders in *Arctic Village Council v. Meyer*[1] suspending the witness requirement for absentee ballots in the context of the COVID-19 pandemic. The superior court dismissed the citizens' complaint for failure to state a claim under Alaska Civil Rule 12(b)(6).

The citizens appeal, arguing that the court erred by dismissing their claim. We construe their arguments as also asserting that the court abused its discretion by not reviewing the Division's rejection of their administrative complaint or considering the legality of the Division's regulations governing the complaint process. But because the superior court did not err or abuse its discretion, we affirm its judgment dismissing the case.

## II. FACTS AND PROCEEDINGS

### A. *Arctic Village Council* And The Administrative Complaint

Alaska law requires absentee ballots to be signed not only by the voter but also by a qualified witness.[2] In September 2020, in the midst of the COVID-19 pandemic, the League of Women Voters of Alaska and the Arctic Village Council sued

---

[1] No. 3AN-20-07858 CI, 2020 WL 6120133 (Alaska Super., Oct. 5, 2020), *aff'd sub nom. State v. Arctic Vill. Council*, 495 P.3d 313 (Alaska 2021).

[2] AS 15.20.081(d).

to enjoin the Division of Elections from enforcing the witness requirement for the November 2020 general election.[3] The plaintiffs in *Arctic Village Council* argued that requiring absentee voters to choose between not voting or risking infection by coming into contact with someone outside their households in order to satisfy the witness requirement was an unconstitutional burden on the right to vote.[4]

The superior court agreed with the plaintiffs and granted the requested preliminary injunction.[5] To effectuate relief, the court ordered the parties to submit a proposed order giving specific directions to the Division on how to implement and inform the public of the witness requirement's suspension.[6] The court directed that the parties immediately confer and, if possible, stipulate to a proposed order addressing "proposed language to be displayed on the Division's website and any other appropriate state websites"; proposals for the use of social media, television, and radio; whether it was still feasible to send informational mailings to absentee voters; and "any other topics the parties believe to be relevant to implementation of the order."[7] The court further ordered: "If they cannot agree, each party shall submit a proposed order."[8] Accordingly, the State negotiated a proposed order with the plaintiffs and submitted it to the court. At the same time, however, the State filed an appeal with us; but after hearing oral argument we affirmed the preliminary injunction on October 12, 2020.[9]

---

[3]    *Arctic Vill. Council*, 495 P.3d, 316-17.

[4]    *Id.* at 317.

[5]    *Id.* at 318.

[6]    *Arctic Vill. Council*, 2020 WL 6120133, at *7.

[7]    *Id.*

[8]    *Id.*

[9]    *Arctic Vill. Council*, 495 P.3d at 319.

Nearly two years later, in September 2022, five private citizens unassociated with the *Arctic Village Council* litigation — Thomas W. Oels, David H. Johnson, Pamela L. Bickford, William de Schweinitz, and Loy A. Thurman — submitted a complaint to the Division and several other state officials and entities, requesting "a Full Forensic Audit of 2020 Election Records." The complaint included elements of both a public records request and an administrative complaint under the Help America Vote Act (HAVA),[10] a federal law passed in 2002 with "[t]he preeminent purpose of . . . assist[ing] states with the administration and regulation of federal elections."[11] The Division requested clarification, asking specifically that the complainants separate out their HAVA complaint and their public records request (if they intended both) and that they comply with the procedural requirements for those filings; the Division included a link to the appropriate HAVA complaint form. The Division also asked that the complainants "eliminate any factual and legal allegations irrelevant to [their] complaints and requests."

Rather than more clearly focusing their claims as requested, however, the complainants submitted an addendum arguing that their existing complaint was clear enough. On October 17, 2022, in a five-page, substantive letter, the Division rejected the complaint. Treating it as a complaint under HAVA, the Division explained that Congress, in the interest of uniformity in federal elections standards, had mandated

---

[10]    52 U.S.C. §§ 20901-21145; see 52 U.S.C. § 21112 for the requirements for state-based administrative complaint procedures. See 6 AAC 25.400–490 for the Division's responsive regulations.

[11]    *Crowley v. Nevada*, 678 F.3d 730, 735 (9th Cir. 2012) (emphasis omitted); *see also State ex rel. League of Women Voters v. Herrera*, 203 P.3d 94, 99 (N.M. 2009) ("In HAVA's preamble, the legislation's purpose is set forth as establishing '*minimum* election administration standards for States and units of local government with responsibility for the administration of Federal Elections.' " (emphasis by the court) (quoting Pub. L. No. 107-252, 116 Stat. 1666, 1666 (2002))).

certain procedural requirements for challenges to state elections, and that the Division had responded by creating "an approved state plan" for such complaints implemented by regulations "set forth at 6 AAC 25.400–.490." One of the regulatory requirements is that a complaint be rejected for filing "if . . . it does not, on its face, allege a violation of [52 U.S.C. §§ 21081–21085]."[12] Deciding that the complainants had failed to meet this standard, the Division rejected their complaint, concluding with a request that the complainants "please ensure that any future complaint complies with 6 AAC 25.400–.490." When the complainants responded with a second addendum, the Division rejected it summarily, advising that "there will be no hearing or further action taken on [the] Complaint" and again asking that "any future complaint" comply with the regulations.

The complainants returned to the Division in December 2022 after having filed this action, apparently in the belief that their superior court case cured the deficiencies in their administrative complaint. The Division reiterated the regulatory requirements for a viable HAVA complaint and advised the complainants that, having filed an action in superior court, they should now consider that to be the appropriate forum for any "requests for hearings and other motions."

## B. Superior Court

The complainants filed this action in superior court in November 2022, expressly disclaiming any intent to appeal the Division's decision but seeking declaratory and injunctive relief. Their complaint was aimed primarily at the Attorney General's review of a ballot measure[13] and the *Arctic Village Council* litigation,

---

[12]     6 AAC 25.430(d)(3). The sections of the United States Code referenced within this provision of the AAC have been reclassified as 52 U.S.C. §§ 21081–21085.

[13]     State of Alaska, Dep't of Law, Op. Att'y Gen., 2019200578 (Aug. 29, 2019), https://law.alaska.gov/pdf/opinions/opinions_2019/19-003_2019200578.pdf.

although it also alleged that the Division's complaint procedures were not in compliance with HAVA. They filed an amended complaint a few months later focused entirely on the *Arctic Village Council* litigation.

The State soon filed a motion to dismiss under Alaska Civil Rule 12(b)(6). The motion characterized the complaint's sole claim as, in essence, an argument that the defendants had violated the law by following a court order, and argued that because the "Division violated no law or constitutional provision by following the[] court orders," the complainants had stated no claim on which relief could be granted.

The court granted the State's motion to dismiss. It agreed with the State that the case was primarily an attempt to "collaterally attack" the superior court order and our decision on appeal in *Arctic Village Council*, and "[i]n non-legal terms, that ship ha[d] sailed." The complainants filed several subsequent motions attempting to litigate the Division's rejection of their complaint and the lawfulness of the Division's HAVA regulations, but the court denied those motions and entered final judgment for the State.

Three of the complainants — Bickford, Johnson, and Thurman (collectively "Bickford") — filed this appeal.

## III.   STANDARD OF REVIEW

We review motions to dismiss "de novo, construing the complaint liberally and accepting as true all factual allegations."[14] "We review the denial of a motion to amend a pleading for abuse of discretion."[15]

## IV.   DISCUSSION

We conclude, for the reasons that follow, that the superior court did not err by dismissing Bickford's amended complaint and that it did not abuse its discretion

---

[14]   *Sagoonick v. State*, 503 P.3d 777, 791 (Alaska 2022) (quoting *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012)).

[15]   *Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 568 (Alaska 2015).

by declining to consider other claims Bickford may have attempted to raise following the dismissal order.

    **A.    Bickford's Amended Complaint Did Not State A Claim On Which Relief Could Be Granted.**

    The crux of Bickford's complaint was that the courts violated the state and federal constitutions by their rulings in *Arctic Village Council*; that the Attorney General and the lawyers in the Department of Law lacked the "statutory authority" to help draft or agree to the proposed order the superior court issued allegedly in violation of the constitutions; and that the Lieutenant Governor and the Division lacked the "statutory authority" to follow that order once it had issued.  Bickford's argument is based on a fundamental misunderstanding of the constitutional responsibilities of the judicial and executive branches.

    "Early in this country's jurisprudence it was established that we are a government of laws, not of men, and that the task of expounding upon fundamental constitutional law and its application to disputes between various segments of government and society rests with the judicial branch of government."[16]  This means that state courts have the broad "power to void laws incompatible with constitutional provisions."[17]  And executive branch agencies like the Division and the Department of Law do not act unlawfully — instead they act in accordance with basic constitutional principles — when they respect judicial decisions in constitutional matters and follow court orders.[18]

---

    [16]    *Boucher v. Bomhoff*, 495 P.2d 77, 79 (Alaska 1972) (citing *Marbury v. Madison*, 5 U.S. 137, 163 (1803)).

    [17]    *Moore v. Harper*, 143 S. Ct. 2065, 2081 (2023).

    [18]    *See Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (explaining that interpreting Constitution is responsibility of judiciary; state legislators, executives, and judges are sworn to follow Constitution; therefore, state officials who do not abide by judicial

In *Arctic Village Council*, reviewing the preliminary injunction against enforcement of the witness requirement, we affirmed on grounds that the plaintiffs were likely to prevail on the merits of their claim.[19] In doing so we applied our well-established analysis for assessing an election law's constitutionality,[20] beginning with the undisputed premise that the right to vote "is one of the fundamental prerogatives of citizenship."[21] We concluded that "the witness requirement imposed a substantial constitutional burden [on this right] in the unique context of the COVID-19 pandemic," and that "the State's countervailing interests," though "compelling 'in the abstract,'" did not justify the burden because "the witness requirement was not shown to effectively advance the State's interest in deterring fraud and [was] not narrowly tailored to advance the interest in promoting confidence in the election."[22] Our decision to affirm the preliminary injunction — based on our interpretation of the Alaska Constitution — was an exercise of the judicial authority accorded us by our constitutional form of government.[23] And the fact that executive branch officials then followed the courts' orders is what the citizens of a constitution-based government are entitled to expect.

---

interpretations of Constitution violate their "undertaking to support it"); *Nelson v. Steiner*, 279 F.2d 944, 948 (7th Cir. 1960) ("The executive branch of government has no right to treat with impunity the valid orders of the judicial branch.").

[19] *State v. Arctic Vill. Council*, 495 P.3d 313, 320-26 (Alaska 2021).

[20] *Id.* at 321.

[21] *Id.* (quoting *Miller v. Treadwell*, 245 P.3d 867, 868 (Alaska 2010)).

[22] *Id.* at 326 (quoting *State, Div. of Elections v. Green Party of Alaska*, 118 P.3d 1054, 1066 (Alaska 2005)).

[23] *See Moore v. Harper*, 143 S. Ct. 2065, 2089 (2023) ("State courts retain the authority to apply state constitutional restraints when legislatures act under the power conferred upon them by the Elections Clause [of the U.S. Constitution].").

Because there is no question that the state officials and entities named in the complaint were acting appropriately, within their constitutional roles, in the context of the *Arctic Village Council* case, the complaint failed to allege any wrongdoing on the part of the defendants. The superior court did not err when it dismissed the complaint under Rule 12(b)(6) for failing to state a claim on which relief could be granted.

**B.** **The Superior Court Did Not Abuse Its Discretion By Denying The Plaintiffs' Attempts To Raise New Issues Following The Dismissal.**

In addition to her arguments related to the *Arctic Village Council* case, Bickford argues that the superior court erred by failing to consider the legality of the Division's rejection of the administrative complaint, devoting much of her brief on appeal to alleged flaws in the State regulations adopted to implement HAVA. The first complaint Bickford filed in court included a claim for declaratory relief apparently asking for a holding that the Division's election-related complaint procedures failed to comply with federal law. But Bickford abandoned this claim in her amended complaint, and the superior court was therefore not asked to address it on the State's motion to dismiss and cannot have erred by failing to do so.

Following the court's dismissal order, however, Bickford filed a motion to amend the judgment, more accurately characterized as a motion for reconsideration of various orders including the dismissal order. At the same time, she filed a "Partial Notice of Appeal" and a request for a trial de novo, attaching, among other things, the Division's letters rejecting the administrative complaint. Reading these documents together it appears that Bickford was asserting that she had intended to pursue her HAVA-related claims in court, and that her failure to do so was due solely to her "ignorance of the rules and methods to distinguish claims in two jurisdictions." On appeal she contends that the superior court abused its discretion when it denied these motions and an earlier-filed motion to amend her complaint.

The court denied reconsideration of its dismissal order both because Bickford's motion was untimely[24] and because it did "not state grounds for reconsideration under [Alaska] Civil R[ule] 77(k)." The court denied Bickford's motion to file a second amended complaint because she had not filed a proposed complaint with the motion and thus had failed to demonstrate an ability to "articulate[] any new claims that would not be subject to dismissal." Finally, in denying Bickford's "Partial Notice of Appeal," the court explained that because "the entire case has been disposed of at the trial court level by the final judgment," Bickford was "now free to appeal the case in full" pursuant to the Alaska Appellate Rules. We see no abuse of discretion in any of these rulings.

Because Bickford was self-represented, we read her various pleadings liberally in an effort to determine what claims and procedural steps she intended.[25] Although she did not file a proposed second amended complaint, as the court noted, her argument in support of doing so observed that the State had substituted the current officeholders for "two defendants . . . whose actions are the basis of this complaint," and she asked that she be allowed "to join the past office holders upon which Plaintiffs' claims rest." The motion for leave to file the second amended complaint made no other argument in support of joining the past officeholders.

Leave to amend a complaint under Alaska Civil Rule 15(a) should be "freely given," but amendments asserting claims that are legally insufficient on their

---

[24] Bickford filed her motion to amend the judgment — asking the court to reconsider its dismissal order — on April 24, 21 days after the dismissal order was distributed. Motions for reconsideration are governed by Alaska Civil Rule 77(k), which provides that "[a] motion to reconsider the ruling must be made within ten days after the date of notice of the ruling as defined in Civil Rule 58.1(c)."

[25] *Torrence v. Blue*, 552 P.3d 489, 492-93 (Alaska 2024).

face should be denied as futile.[26]  The officeholders that Bickford named in her complaint were no longer in office; current officeholders were automatically substituted as parties, as Alaska Civil Rule 25(d)(1) requires.[27]  Adding the former officeholders back into the case would have served no conceivable purpose, as Bickford requested only declaratory relief about the legality of their official actions in the *Arctic Village Council* case and an injunction requiring actions that only current officeholders could take.[28]  And adding parties would have done nothing to cure the obvious legal deficiency in Bickford's claims.

Although Bickford gave only this limited party-based rationale for filing a second amended complaint, her motion to amend the judgment and to "File Partial Notice of Appeal" may be read as seeking to amend her complaint more broadly — specifically to convert it into an appeal of the Division's decision to dismiss the administrative complaint.  In that motion, after referring to the claims formerly presented to the Division, she asserts that "the supervisor's consideration, and dismissal of the claims, was the error."  But a judicial appeal from that administrative decision was untimely by many months.[29]  Moreover, Bickford made no attempt to address the

---

[26]  *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 176-77 (Alaska 2010); Alaska R. Civ. P. 15(a).

[27]  The rule provides:  "When a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party."

[28]  *See Krause*, 229 P.3d at 176-77.

[29]  *See* Alaska R. App. P. 602(a)(2) ("An appeal may be taken to the superior court from an administrative agency within 30 days from the date that the decision appealed from is mailed or otherwise distributed to the appellant.").  The Division's written decision rejecting Bickford's complaint is dated October 17, 2022; Bickford filed her first court complaint about 45 days later, specifically stating, "This action is

core of the administrative decision — that the complainants failed to follow the regulatory requirements for a valid HAVA complaint.[30] Even if an administrative appeal had been timely, Bickford gave the superior court no reason to believe it would be anything but futile.

Bickford's post-dismissal pleadings may also be read as asserting a direct challenge to the Division's HAVA regulations, resurrecting the claim for declaratory relief asserted in the original complaint but omitted from the amended complaint.[31] But again, Bickford's post-dismissal pleadings do not describe the substance of such a claim — for example, identifying which regulations were unlawful and why — and the superior court was not required to formulate the claim for her in order to determine whether it was legally viable. Bickford is not precluded from bringing such a claim,[32] but the superior court did not abuse its discretion by failing to recognize that she

---

not an appeal of an administrative hearing or decision." Reading her pleadings liberally, she apparently sought to assert the administrative appeal for the first time on April 24, 2023, 190 days after the written decision was issued.

[30]    Those requirements are simple and straightforward. *See* 6 AAC 25.420 ("Form of complaint"). Notably, the regulations also *require* the director to reject a complaint for filing if "more than 90 days have elapsed since the final certification of the federal election at issue." 6 AAC 25.430(d)(4). Bickford sought to challenge the results of an election that had been certified over 20 months before.

[31]    In her "Partial Notice of Appeal," for example, Bickford referred to "errors and omissions of the State of Alaska in enacting the enforcement requirements of [HAVA]" and asserted "that Alaska has conducted elections since 2002 (if not before) 'out-of-compliance' with specific federal requirements having to do with absentee ballots."

[32]    *See* AS 44.62.300(a) ("An interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court."); *see also Coghill v. Boucher*, 511 P.2d 1297, 1304 (Alaska 1973) (holding that registered voters are "interested persons" under Administrative Procedure Act for purposes of challenging election regulations).

intended to bring one in this case. And we do not consider on appeal the merits of a claim that was not litigated in the trial court.[33]

## V. CONCLUSION

The superior court's judgment is AFFIRMED.

---

[33] *Pieper v. Musarra*, 956 P.2d 444, 446 (Alaska 1998) ("Notwithstanding the leeway given to pro se litigants, the requirement that an issue be preserved by being presented in the superior court arises out of notions of judicial finality and efficiency, as well as fairness to the opposing party.").