*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BILLY DEAN SMITH and JACOB LEE ANAGICK, | ) ) ) | Supreme Court No. S-16711 |
| Appellants, | ) ) | Superior Court No. 1JU-15-00657 CI |
| v. | ) ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT OF CORRECTIONS, NANCY DAHLSTROM, Commissioner, Alaska Department of Corrections, in her official capacity, and UNKNOWN DEPARTMENT OF CORRECTIONS EMPLOYEES, in their official capacities, | ) ) ) ) ) ) ) ) ) | No. 7404 – August 30, 2019 |
| Appellees. | ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Billy Dean Smith, pro se, Seward, and Jacob Lee Anagick, pro se, Kenai, Appellants. Matthias Cicotte, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellees.

Before: Bolger, Chief Justice, Stowers, Maassen, and Carney, Justices. [Winfree, Justice, not participating.]

CARNEY, Justice.

## I.    INTRODUCTION

Two prisoners in Alaska Department of Corrections (DOC) custody were placed in administrative segregation pending an investigation and disciplinary proceedings related to an alleged escape attempt. The disciplinary decisions were later overturned on appeal to the superior court based on procedural defects. However, the prisoners had lost their Prison Industries jobs because of the administrative segregation placements. They filed a civil suit against two DOC officers in superior court, alleging due process violations and seeking damages for lost wages and property. The case was removed to federal court; the federal judge ruled that the inmates lacked a constitutionally protected interest in their jobs and that the DOC officers were entitled to qualified immunity.

Meanwhile, the prisoners filed another complaint in the superior court, this time naming the officers in both their official and individual capacities and raising due process claims under both the United States and Alaska Constitutions. After both parties cross-moved for summary judgment, the superior court granted summary judgment for the DOC officers. The court found that, although the federal judgment did not bar the prisoners' complaint under the doctrine of res judicata, their constitutional claims lacked merit and the DOC officers were entitled to qualified immunity.

The prisoners appeal, arguing that they have a constitutionally protected interest in their jobs; that this interest was clearly established and therefore precludes a qualified immunity defense; that the superior court made various procedural errors; and that it did not adequately instruct the unrepresented prisoners on how to pursue their claims. Because we find that the administrative segregation hearings conducted by DOC satisfied any due process requirements to which the prisoners may have been entitled, and because the superior court did not abuse its discretion in any of its procedural rulings, we affirm the superior court's grant of summary judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Billy Dean Smith and Jacob Lee Anagick are prisoners in DOC custody. In 2011 they were housed at Lemon Creek Correctional Center and worked in a Prison Industries program providing laundry services to the Alaska Marine Highway System.

On September 12, 2011, Lemon Creek officers conducted a "shakedown," or unannounced search, of the prison employment building based on information they had received "concerning a plan of an escape." According to the incident reports on the "shakedown," DOC officers found potential escape implements — lengths of rope, a tarp, clothing that had not been issued by Lemon Creek, and a trash bag holding pieces of dry wood and empty condiment bottles — at Smith's and Anagick's work stations. The reports do not specify the source of the tip, although Smith and Anagick apparently believed the informant to be an officer. Smith and Anagick claimed that the informant did not specifically name any of the prisoners allegedly planning to escape. Smith and Anagick have consistently denied any intent or plan to escape.

The next day Lemon Creek officers placed Smith and Anagick in administrative segregation pursuant to 22 Alaska Administrative Code (AAC) 05.485.[1] An administrative segregation hearing was held six days later.[2] The classification

---

[1]    Former 22 AAC 05.485(a), (a)(8) (2011) ("A prisoner may be assigned to administrative segregation if the prisoner . . . represents a substantial immediate threat to the security of the facility . . . .").

[2]    22 AAC 05.485(d) requires a classification hearing "no later than three working days after placement" unless the prisoner requests a continuance or DOC finds that "exceptional circumstances" provide "good cause" to postpone the hearing for up to 24 hours. "Working days" excludes weekends and holidays; January 17, 2011, was Martin Luther King Day. *See* 22 AAC 05.660(a)(37) (defining "working day"). Smith and Anagick do not raise on appeal the fact that their hearing occurred one working day

(continued...)

committee recommended that the prisoners remain in segregation "[p]ending the outcome of an ongoing investigation," finding that they posed "a substantial risk to the security of the facility" and "a substantial and immediate threat to the public."[3] Lemon Creek's superintendent approved the committee's recommendation a day later.[4] As a result of the administrative segregation placement, Smith and Anagick were terminated from their Prison Industries laundry jobs. Smith and Anagick were transferred from Lemon Creek to Spring Creek Correctional Center in January 2012. Officials at Spring Creek reviewed their administrative segregation placements following the transfer and maintained the placements until May 2012.

In related disciplinary proceedings Smith and Anagick were found to have possessed escape implements. They successfully appealed to the superior court, which overturned the disciplinary decisions because of procedural defects.[5] In his appeal to the superior court Smith also attempted to raise claims for lost wages, but the court concluded that such claims "would have to be brought in a separate civil action."

---

[2] (...continued) later than the regulation demands.

[3] *See* 22 AAC 05.485(a)(8).

[4] *See* 22 AAC 05.485(e).

[5] The court reversed the disciplinary decisions imposing punitive segregation because the officer who allegedly found the escape implements was not present at the disciplinary hearings. Decision on Appeal, *Smith v. State, Dep't of Corr.*, No. 1JU-11-01012 CI, at *6 (Alaska Super., July 24, 2014); Order on Appeal, *Anagick v. State, Dep't of Corr.*, No. 1JU-11-01045 CI, at *8 (Alaska Super., May 27, 2014). *See* 22 AAC 05.435(a) (providing that if prisoner wishes to call officer who wrote disciplinary report, that officer "shall appear as a witness" at disciplinary hearing); *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1052-53 (Alaska 2011) (reaffirming prisoner's state constitutional due process right to cross-examine witnesses at disciplinary hearing).

In September 2013, with their disciplinary appeals pending, Smith and Anagick filed a civil rights action in superior court under 42 U.S.C. § 1983 against the Lemon Creek superintendent and a correctional officer in their individual capacities.[6] They alleged various procedural defects in the administrative segregation classification process. The defendants removed the case to federal court in December 2013.

## B.    Proceedings

### 1.    Complaint

Smith and Anagick filed another complaint in state superior court in April 2015 while the federal case was still pending. They named as defendants the DOC commissioner and "unknown" DOC employees — whom they believed might include the Lemon Creek correctional officer and superintendent previously sued — in their individual and official capacities.[7] They alleged that they had a liberty interest in continued participation in their laundry jobs under the Alaska Constitution. They also

---

[6]    42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[7]    DOC proceeded as if it were a defendant in the case, though the complaint did not name it and it does not appear that the attorney general certified DOC as a defendant in the officers' place. *See* AS 09.50.253 (providing that suit against state employee is treated as proceeding against State if attorney general certifies that employee acted within scope of his or her employment). The court also assumed DOC was a defendant. Although Smith and Anagick did not list DOC in the caption in superior court, they treated DOC as a defendant in the body of their arguments, and their brief on appeal lists DOC as a party. When the DOC commissioner changed and DOC moved to substitute the new commissioner as a defendant, Smith and Anagick agreed, conceding that they were pursuing claims against the commissioner only in his official capacity. We thus evaluate Smith and Anagick's arguments on appeal as they apply against DOC and its current commissioner in her official capacity.

alleged that by failing to hold specific job termination hearings separate from the administrative segregation classification hearings, DOC had violated Smith's and Anagick's due process rights under the Fourteenth Amendment,[8] their right to petition the court for a redress of their grievances under the First Amendment,[9] and their confrontation rights under the Sixth Amendment.[10] Smith and Anagick sought back wages and punitive damages.[11]

### 2. Relevant motions

Two of the issues raised in the motions before the superior court are relevant to Smith and Anagick's appeal. First, in February 2016 Smith and Anagick moved to sanction DOC and its employees for spoliation of video evidence. They asserted that DOC improperly failed to preserve videos of the September 2011 search of the Lemon Creek prison employment program building, as well as tapes from the subsequent administrative segregation hearings. They claimed the videos of the search would have shown that the escape implements were "not found where an 'unknown'

---

[8]     *See* U.S. Const. amend XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . .").

[9]     *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."); *Cal. Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 513 (1972) (recognizing that the First Amendment protects "the right of access to the agencies and the courts").

[10]     *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .").

[11]     They also sought the return of video game consoles and games they claimed had been improperly seized, but these claims are not at issue on appeal.

officer allegedly 'found' " them, which was at Smith's and Anagick's workstations.[12] Smith and Anagick argued that DOC officers had allowed the videos to be destroyed knowing that the prisoners planned to challenge their administrative segregation placements and would need the videos as evidence. They requested that "spoliation jury instructions" be given at trial. In September 2016 the superior court granted the motion in part: interpreting "spoliation jury instructions" as "an instruction directing the jury to presume that lost evidence would have been favorable to the plaintiffs," the court stated that it would give such an instruction if the case proceeded to trial.[13]

Second, in March 2016 Smith and Anagick notified the superior court that they had filed another civil suit against DOC officers, *Smith v. Busby*.[14] In July they moved to consolidate that case with this one. The court denied their motion, finding that consolidation would be premature because the filing fee in *Busby* had not been paid and because not all the *Busby* defendants had been served with pleadings from this case. Smith responded with an affidavit stating that the filing fee was "paid in full" prior to the denial of the motion to consolidate. However, it does not appear that he and Anagick renewed their motion or sought reconsideration.

---

[12]     The videos of the search were apparently destroyed because Lemon Creek's recording equipment automatically recorded over its surveillance footage every 30 days unless prison staff manually backed it up to a computer, which they did not.

[13]     *See Thorne v. Dep't of Pub. Safety*, 774 P.2d 1326, 1331 (Alaska 1989) (holding that where State's failure to preserve video evidence deprived plaintiff of due process, appropriate sanction was to "remand . . . with directions to presume that the videotape would have been favorable to [plaintiff]").

[14]     Complaint, *Smith v. Busby*, No. 1JU-16-00630 CI (Alaska Super., May 18, 2016).

### 3.    Summary judgment

In late March 2016 the federal district court granted summary judgment in favor of the DOC officers being sued in their individual capacities.[15]  The federal court concluded that:  Smith and Anagick did not have a protected liberty interest in avoiding administrative segregation under the United States Constitution;[16] they did not have a state-created liberty interest that would entitle them to due process protection;[17] and the DOC officers were entitled to qualified immunity because any relevant liberty interest the prisoners might have claimed was not clearly established.[18]

---

[15]    *Smith v. Corcoran*, No. 1:13-cv-00010-TMB (D. Alaska Mar. 30, 2016), *aff'd by Smith v. Corcoran*, 716 F. App'x 656 (9th Cir. 2018) (mem.).

[16]    *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."); *Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983) (holding that "narrow range of protected liberty interests" retained by prisoners under Fourteenth Amendment's due process clause did not include interest in remaining in general population and avoiding administrative segregation), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472, 482-84 (1995).

[17]    *See Sandin*, 515 U.S. at 484.  While state statutes and regulations may "create liberty interests which are protected by the Due Process Clause," these interests are limited to avoiding forms of restraint that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*  The district court reasoned that although conditions in administrative segregation were "more restrictive than for general population inmates," the deprivations Smith and Anagick faced "[did] not amount to a 'dramatic departure' " from typical conditions and thus did not warrant additional due process protections.

[18]    Under federal law, "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights . . . .' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A right is "clearly established" only if "[t]he contours of the right [are] sufficiently clear that a reasonable
(continued...)

About three weeks after the federal district court's decision, Smith and Anagick moved for summary judgment in their state superior court case. They asserted that their laundry jobs were rehabilitative and that under *Ferguson v. State, Department of Corrections* they were entitled to due process before they could be terminated.[19] They argued that due process violations at their administrative segregation hearings had deprived them not only of their jobs but of property and wages. They also seemed to assert, apparently for the first time, that DOC failed to properly train officers, although the factual basis for this claim is unclear.[20] Finally, they raised a new spoliation of evidence claim, asserting that DOC employees had destroyed employment contracts Smith and Anagick had signed in 2010 and 2011 for their laundry jobs.

In June 2016 DOC and the officer defendants cross-moved for summary judgment. They argued that: any claims related to job termination and property loss were barred by res judicata because of the federal court decision;[21] the laundry jobs were

---

[18]    (...continued)
official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)), *abrogated in part on other grounds by Pearson*, 555 U.S. at 236.

[19]    *See* 816 P.2d 134, 139-40 (Alaska 1991) (acknowledging that "prisoners have an enforceable [state constitutional] interest in continued participation in rehabilitation programs," and thus cannot be terminated from such programs "without a measure of due process of law").

[20]    Smith and Anagick asserted only that "[h]ad the training been proper the [u]nknown [d]efendant would have been properly trained to identify" himself or herself. They may be referring to the fact that the officer informant whose tip led to the September 2011 search was never identified.

[21]    The doctrine of res judicata bars relitigation of an action if "(1) a final judgment on the merits [has been issued], (2) [by] a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."
(continued...)

not rehabilitative and thus not subject to federal or state due process protections; the First and Sixth Amendments did not apply to Smith and Anagick's claims; the inmates had failed to properly plead a "negligent training" claim; and the DOC officers were entitled to qualified immunity.

Smith and Anagick opposed DOC's cross-motion, raising for the first time a claim that DOC had breached the employment contracts it had executed with them by terminating them from their jobs without notice and a hearing. DOC filed a reply; Smith and Anagick then filed a responsive pleading, which the court treated as a sur-reply. In response to DOC's argument in its reply that they lacked a viable contract claim, they argued that to the extent their complaint was "procedurally defective," the court should treat their sur-reply as a motion for leave to amend. They contended that res judicata did not bar their contract claims because those claims "were not ripe for litigation" until their disciplinary appeals were resolved, which did not occur until after the federal case was filed. They also asserted that DOC had violated its own policy, which requires notice and a hearing, if requested, prior to termination from rehabilitative programs.[22] They argued that the "administrative segregation exception" to this policy should not apply because the segregation hearings had not provided "all the [d]ue [p]rocess requisites" that a job termination hearing under DOC policy should provide.

Following oral argument on the summary judgment cross-motions, the superior court granted summary judgment to DOC and its officers in April 2017. The court determined that res judicata did not bar Smith and Anagick's claims, but concluded

---

[21]    (...continued)
*Conitz v. Alaska State Comm'n for Human Rights*, 325 P.3d 501, 507 (Alaska 2014) (quoting *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010)).

[22]    *See* STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES 808.04 § VII(D)(4) (2014), www.correct.state.ak.us/pnp/pdf/808.04.pdf.

that they did not have a protected liberty interest in their jobs because they had not established that the jobs were "rehabilitative" under *Ferguson*.[23] As a result, the court concluded that the administrative segregation placements and job terminations had not violated due process. The court also determined that Smith and Anagick's First and Sixth Amendment claims lacked merit and that the prisoners had failed to state a cognizable claim for loss of property. Finally, the court found that the DOC officers were entitled to qualified immunity for both the federal and state law claims.

Smith and Anagick appeal, arguing that they do have a clearly established liberty interest in their jobs under *Ferguson* and that the superior court made various procedural errors.

## III. STANDARDS OF REVIEW

"We review a grant of summary judgment de novo[,] . . . review[ing] the facts in the light most favorable to the non-moving party and draw[ing] all factual inferences in the non-moving party's favor."[24] We will uphold a grant of summary judgment "if there are 'no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.' "[25] While "[t]he evidentiary threshold necessary to preclude the entry of summary judgment is low,"[26] the evidence cannot be "based entirely on 'unsupported assumptions and speculation' and must not be 'too incredible

---

[23]     *See Ferguson*, 816 P.2d at 139-40.

[24]     *Achman v. State*, 323 P.3d 1123, 1126 (Alaska 2014) (quoting *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013)).

[25]     *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) (quoting *Hymes v. DeRamus*, 119 P.3d 963, 965 (Alaska 2005)).

[26]     *Lum v. Koles*, 426 P.3d 1103, 1109 (Alaska 2018) (quoting *Crawford v. Kemp*, 139 P.3d 1249, 1253 (Alaska 2006)).

to be believed by reasonable minds.' "[27]

"We review issues concerning constitutional rights of inmates de novo."[28] "Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[29] We also review de novo "[t]he applicability of both state and federal immunity."[30]

We "review the denial of a motion to amend a pleading for abuse of discretion."[31] An abuse of discretion occurs "when the decision on review is manifestly unreasonable," but the trial court has discretion to "deny such a motion where amendment would be futile because it advances a claim or defense that is legally insufficient on its face."[32] "We use our independent judgment to determine whether such an amendment would be legally insufficient."[33]

"We review the denial of a motion to consolidate for abuse of discretion."[34] The abuse of discretion standard also applies to the superior court's "decisions about

[27]     *Id.* (quoting *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014) (first quoting *Peterson v. State, Dep't of Nat. Res.*, 236 P.3d 355, 367 (Alaska 2010); then quoting *Wilson v. Pollet*, 416 P.2d 381, 384 (Alaska 1966))).

[28]     *Simmons v. State, Dep't of Corr.*, 426 P.3d 1011, 1015 (Alaska 2018).

[29]     *Walker v. State, Dep't of Corr.*, 421 P.3d 74, 81 (Alaska 2018) (quoting *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011)).

[30]     *Smith v. Stafford*, 189 P.3d 1065, 1070 (Alaska 2008).

[31]     *Lingley v. Alaska Airlines, Inc.*, 373 P.3d 506, 511 (Alaska 2016) (quoting *Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 568 (Alaska 2015)).

[32]     *Id.* (first quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015); then quoting *Patterson*, 347 P.3d at 568).

[33]     *Id.*

[34]     *Moffitt v. Moffitt*, 341 P.3d 1102, 1104 (Alaska 2014).

guidance to a pro se litigant."[35]  "An abuse of discretion exists when a party has been deprived of a substantial right or seriously prejudiced" as a result of the court's ruling.[36]

## IV.  DISCUSSION

### A.  Smith And Anagick Were Not Denied Due Process.

Smith and Anagick rely on *Ferguson v. State, Department of Corrections* to argue that their laundry jobs were rehabilitative and that, as a result, they had a state constitutional interest in retaining those jobs.[37]  They contend that they were entitled to notice and separate job termination hearings prior to their removal from the Alaska Marine Highway System laundry program and that DOC denied them due process by not holding such hearings.  In *Ferguson* we held that prisoners' right to rehabilitation, guaranteed by the Alaska Constitution, includes the right not to be terminated from rehabilitative programs without due process.[38]  We recognize that Smith's and Anagick's laundry jobs appear to share some of the characteristics we have previously found relevant in determining a program to be rehabilitative.[39]  But we do not reach the

---

[35]     *Limeres v. Limeres*, 367 P.3d 683, 687 (Alaska 2016) (quoting *Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013)).

[36]     *Id.* (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[37]     *See* 816 P.2d 134, 139-40 (Alaska 1991).

[38]     *Id.*; *see* Alaska Const. art I, § 12 (providing that one aim of penal system is "the principle of reformation").

[39]     *See Ferguson*, 816 P.2d. at 140 (concluding that because program was "voluntary, require[d] application and approval, and confer[red] special privileges," it was rehabilitative, and prisoner could not be removed from it "without a measure of due process").  The laundry jobs were located in a separate building, paid better and offered more benefits than other prison jobs, and may have required an application or recommendation for hire.  Smith and Anagick argue that the laundry program, like the

(continued...)

question whether Smith and Anagick had a protected property or liberty interest in their jobs because, even assuming they did, we conclude they received due process.

We have previously considered prisoners' due process claims under the *Mathews v. Eldridge*[40] balancing test.[41] This test requires us to consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the [State]'s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[42]

Smith and Anagick assert a private interest in their continued participation in jobs that they characterize as rehabilitative. But even assuming that their jobs were rehabilitative and thus subject to constitutional due process protections, the proceedings for their placement in administrative segregation satisfied any due process requirements that might have attached to their interest in retaining their jobs. The applicable regulation provides that a prisoner placed in administrative segregation must be given a classification hearing "no later than three working days after placement" unless the prisoner requests a continuance or DOC establishes good cause to postpone the hearing

---

**39**     (...continued)
program in *Ferguson*, is therefore rehabilitative. *See id.*

**40**     424 U.S. 319 (1976).

**41**     *See Barber v. Schmidt*, 354 P.3d 158, 161-62 (Alaska 2015) (applying *Mathews* test to prisoner's motion for right to counsel in proceedings challenging DOC's restrictions on possession of certain video games).

**42**     *Mathews*, 424 U.S. at 335.

by up to 24 hours.[43]  Smith and Anagick were given such a hearing; within days of their placement in administrative segregation, a classification committee determined that they posed "a substantial risk to the security of the facility" and that the placement was appropriate.[44]  The superintendent approved the committee's recommendation as required by regulation.[45]

To the extent that Smith and Anagick argue that separate termination hearings would have provided procedural protections greater than those they received at the administrative segregation hearings, there is no evidence in the record to support that.  DOC's policies and procedures indicate rather that removal from rehabilitative programs involves procedures almost identical to those for placement in administrative segregation:  notice of the reason for removal and a classification hearing before a committee or hearing officer whose decision is reviewed by the superintendent.[46]  In fact, procedural protections for administrative segregation placement appear *more* protective: 22 AAC 05.485 provides that "a prisoner *must* be granted a classification hearing as soon as possible" when placed into administrative segregation, and that the superintendent

---

[43]  22 AAC 05.485(d).

[44]  *See* former 22 AAC 05.485(a)(8) (2011) (authorizing administrative segregation if prisoner "represents a substantial immediate threat to the security of the facility"); *see also supra* note 2.

[45]  *See* 22 AAC 05.485(e); 22 AAC 05.212(e).

[46]  *Compare* 22 AAC 05.485(b)-(f) (providing that prisoner assigned to administrative segregation is entitled to notice of reason for confinement, timely classification hearing before classification committee, and review of placement by superintendent), *with* STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES 808.04 § VII(D), www.correct.state.ak.us/pnp/pdf/808.04.pdf (providing that prisoner facing removal from rehabilitative program is entitled to notice, may request a hearing, and may have decision of hearing officer or classification committee reviewed by superintendent).

must review the decision,[47] while DOC's policy for removal from rehabilitative programs provides that a prisoner *may* request a hearing and may ask the superintendent to review the decision.[48] The "probable value, if any, of [the] additional or substitute procedural safeguards" that Smith and Anagick seek would therefore be minimal, if not nonexistent.[49]

In addition, relevant DOC policies and procedures appear to contemplate termination from a rehabilitative program as a consequence of placement in administrative segregation without the need for an additional hearing. Policy 808.04 governs removal of prisoners from rehabilitative and court-ordered treatment programs and generally requires a notice of intent and opportunity for a classification hearing prior to removal.[50] But section VII(A) of the policy indicates that such procedures are not required in the case of "removal as a necessary condition of the prisoner's placement in administrative segregation."[51] That is exactly what happened here: Smith and Anagick were removed from their jobs as a direct consequence of their placement in administrative segregation.

Smith and Anagick assert that the administrative segregation classification hearings did not provide adequate process with respect to their job terminations because

---

[47] 22 AAC 05.485(d)-(e) (emphasis added).

[48] 22 AAC 05.485(d); STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES 808.04 § VII(D)(4)(a)-(c) (2014), www.correct.state.ak.us/pnp/pdf/808.04.pdf.

[49] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[50] STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES 808.04 § VII(D)(2), (4) (2014), www.correct.state.ak.us/pnp/pdf/808.04.pdf.

[51] *Id.* § VII(A)(1).

"those hearing . . . decisions [were] based on the unverified hearsay of an unknown officer." But to the extent that Smith and Anagick argue that the use of hearsay violated their Sixth Amendment right to confront witnesses,[52] we note that the Sixth Amendment does not apply to civil proceedings.[53] And while prisoners have a due process right under the Alaska Constitution to confront adverse witnesses in disciplinary hearings when they face punitive segregation,[54] we have not extended this protection to administrative segregation hearings or hearings concerning removal from a rehabilitative program. And nothing in the statutes, regulations, or DOC policies governing administrative segregation or termination from rehabilitative programs prohibits the use of hearsay in those proceedings.[55]

---

[52] The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

[53] *Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 574 n.33 (Alaska 2015); *see* U.S. Const. amend. VI (specifying that it applies "[i]n all *criminal prosecutions*" (emphasis added)).

[54] *See James v. State, Dep't of Corr.*, 260 P.3d 1046, 1052-53 (Alaska 2011); 22 AAC 05.435(a) (providing that if prisoner wishes to call as witness at disciplinary proceeding "the member of the facility staff who wrote the disciplinary report, the staff member shall appear as a witness").

[55] *See* 22 AAC 05.485(e) (providing that classification committee or hearing officer has burden of establishing that inmate meets at least one of criteria justifying administrative segregation and that committee recommendation "must include the factual findings and evidence relied upon in sufficient detail" to support review, but not imposing specific evidentiary rules); STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES 808.04 § VII(D)(4) (2014), www.correct.state.ak.us/pnp/pdf/808.04.pdf (entitling prisoners to notice of reason for proposed removal from educational or vocational program and to "classification hearing" but specifying no bar on use of hearsay at hearing).

We conclude that Smith and Anagick received adequate process prior to their termination from the laundry jobs via the administrative segregation classification hearings. Even assuming that they had a protected liberty interest in their jobs under *Ferguson*, the administrative segregation hearings satisfied any due process to which the prisoners may have been constitutionally entitled. We therefore affirm the superior court's award of summary judgment to DOC.[56]

**B.    The Superior Court Did Not Abuse Its Discretion By Denying Smith And Anagick's Motions To Amend Their Complaint And Consolidate Cases.**

   **1.    The superior court did not abuse its discretion by not instructing or allowing Smith and Anagick to amend their complaint.**

Smith and Anagick argue that the superior court "erred by not allowing [them] to amend their pro se complaint to survive summary judgment." In their summary judgment motion, their opposition to DOC's cross-motion for summary judgment, and their sur-reply to DOC's reply to their opposition, Smith and Anagick raised a number of claims in addition to those pled in their complaint. They claimed that DOC was "responsible for the lack of training" of an "unknown" DOC employee, which the parties later characterized as a negligent training claim; breach of an employment contract that provided for notice and hearing prior to termination; and spoliation of

---

[56]    Since "[w]e may affirm a grant of summary judgment on any basis appearing in the record," *Perotti v. Corrs. Corp. of Am.*, 290 P.3d 403, 407 (Alaska 2012) (quoting *DeNardo v. GCI Commc'n Corp.*, 983 P.2d 1288, 1290 (Alaska 1999)), and because we conclude that Smith and Anagick received adequate process and suffered no constitutional violation, we do not reach the DOC officers' argument that the superior court was correct to conclude they were entitled to qualified immunity. *See Diaz v. State, Dep't of Corr.*, 239 P.3d 723, 732 n.47 (Alaska 2010) (declining to address qualified immunity question after concluding prisoner's Fourth and Fourteenth Amendment rights were not violated).

evidence.[57]  In response, DOC argues that Smith and Anagick's claims were meritless and that the superior court was within its discretion to deny their request to amend their complaint to include those claims.

### a.  Negligent training claim

Smith and Anagick assert that the superior court "erred by not having [them] amend the complaint with the negligent training matters."  DOC argues that this claim is waived because Smith and Anagick's brief offers "only a section heading with no argument" to support it.  Even if it is not waived, DOC argues that this claim lacks merit because Smith and Anagick do not explain how DOC's alleged failure to train officers to identify themselves breached a duty or caused them damages.

Smith and Anagick first raised a purported negligent training claim in their motion for summary judgment.  They seemed to allege that DOC had a duty to train its officers to identify themselves, and that the officer who conducted the shakedown and supposedly found the escape implements was not named at their hearings because that officer had not received this training.  The court does not appear to have advised Smith and Anagick to add a negligent training claim to their complaint, but in its summary judgment order found that Smith and Anagick offered "allegations but little evidentiary support to back up their claims," including their negligent training claim.

Even assuming that the informant was an anonymous DOC officer who failed to self-identify because of poor training, Smith and Anagick make no showing that DOC's reliance on such a source violated their constitutional rights.  An argument that an officer's anonymity denied them an opportunity to confront that officer at their

---

[57]     The motion for summary judgment alleges spoliation relating to Smith's and Anagick's employment contracts.  They had previously asserted spoliation of video recordings of the workplace search and their subsequent disciplinary hearings.  Their spoliation argument on appeal appears to be limited to the video evidence.

administrative segregation hearings would be a Sixth Amendment claim that is not applicable to a non-criminal proceeding.[58]  And we have already determined that they received adequate procedural protections at the administrative segregation hearings.  Any lack of training therefore has not damaged them or deprived them of any rights.  The superior court did not abuse its discretion by not instructing them or allowing them to amend their complaint with a negligent training claim.[59]

### b.    Breach of contract claim

Smith and Anagick first raised a breach of contract claim in their opposition to DOC's cross-motion for summary judgment.  They argue that the superior court should have allowed them to amend their complaint to include this claim and should have instructed them on the proper procedure to do so.  They assert their contract claim would have survived summary judgment because their employment contracts for the laundry jobs — which are not part of the record[60] — entitled them to notice and a hearing prior to termination, independent of any due process right to a hearing.  They do not cite

---

[58]    *See* U.S. Const. amend. VI (specifying that confrontation right attaches "[i]n all criminal prosecutions").  The superior court reversed DOC's disciplinary decisions based on our recognition that the state constitutional right to confront witnesses applies to  punitive segregation hearings.  Decision on Appeal, *Smith v. State, Dep't of Corr.*, No. 1JU-11-01012 CI, at *6 (Alaska Super., July 24, 2014); Order on Appeal, *Anagick v. State, Dep't of Corr.*, No. 1JU-11-01045 CI, at *8 (Alaska Super., May 27, 2014); *see James*, 260 P.3d at 1052-53 (concluding prisoner's due process and confrontation rights were violated when officer who wrote incident report underlying disciplinary action did not appear at disciplinary proceeding).

[59]    *See Lingley v. Alaska Airlines, Inc.*, 373 P.3d 506, 511 (Alaska 2016) ("It is within a trial court's discretion . . . to deny [a motion to amend] where amendment would be futile because it advances a claim or defense that is legally insufficient on its face." (quoting *Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 568 (Alaska 2015))).

[60]    Smith and Anagick instead rely on a blank, unsigned sample contract, apparently because DOC did not retain their original contracts in their files.

contractual language explicitly providing for notice or a hearing but argue instead that, because a contract term provided for termination without notice during a 30-day "probation" period, they were implicitly entitled to notice after the probation period. DOC counters that any breach of contract claim would have been futile because Smith's and Anagick's "employment was not subject to due process protections, and . . . prisoners are not entitled to the contractual employment protections of state employees."

Even assuming that the sample contract is identical to the ones Smith and Anagick purportedly signed, it does not confer a right to procedural protections beyond what the prisoners received in this case. It is silent as to an employee's right to any proceedings prior to termination. The sample employment contract specifies that an employee may be terminated without notice not only during the initial 30-day probation period, but also after two unexcused absences or if the employee is "found to be associated . . . or caught with any contraband." (Emphasis omitted.) This appears to comport with the DOC policy allowing removal from a rehabilitative program without a separate hearing if the removal is a consequence of placement in administrative segregation.[61]

A court's duty to instruct self-represented litigants depends on the facts and circumstances of the case before it; that duty does not require the court to "compromise [its] impartiality" or "act as an advocate for one side."[62] The record contains no contract providing any procedural rights beyond DOC's existing policies and procedures. The administrative segregation hearings followed those procedures and, as we have concluded, satisfied due process. The superior court therefore did not abuse its

---

[61] STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES 808.04 § VII(D)(4) (2014), www.correct.state.ak.us/pnp/pdf/808.04.pdf.

[62] *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989).

discretion by not instructing them to amend their complaint.[63]

### c.    Spoliation claim

Smith and Anagick argue that the superior court erred by not allowing them to amend their complaint with a spoliation claim and by not holding a "spoliation evidence hearing" as they requested. They contend that Lemon Creek's superintendent had a duty to ensure preservation of the videotapes of the September 2011 search and subsequent classification hearings.

DOC responds that the spoliation claims are moot because the superior court granted Smith and Anagick relief on their claim of spoliation of video evidence. We agree. The superior court granted Smith and Anagick's request for "spoliation jury instructions" — which it interpreted as an instruction to assume that the evidence that had been lost or destroyed would have been favorable to Smith and Anagick[64] — in September 2016. But because the superior court subsequently granted summary judgment for the DOC officers, no trial was held, and no jury instruction was given. It was therefore not an abuse of discretion for the superior court not to allow Smith and Anagick to add a spoliation claim to their complaint.

---

[63]     *Cf. Lingley*, 373 P.3d at 511 (finding no duty to allow litigant to amend complaint where amendment would advance facially unviable claim). We also note that, under the Alaska Prison Litigation Reform Act, Smith and Anagick could seek only retrospective relief for a breach of contract claim; they would not be entitled to prospective relief unless they also established violation of a state or federal right. AS 09.19.200.

[64]     *See Thorne v. Dep't of Pub. Safety*, 774 P.2d 1326, 1331 (Alaska 1989) (finding that "an appropriate sanction" for State's failure to preserve video evidence sought by plaintiff was "to remand the case . . . with directions to presume that the videotape would have been favorable to [plaintiff]").

### 2. The superior court did not abuse its discretion by declining to consolidate *Busby* with this case.

Smith and Anagick also argue that the superior court erred by not consolidating their other civil case, *Smith v. Busby*,[65] with this case. In support of this contention, they assert only that the filing fee in *Busby* was paid prior to the court's denial of the motion to consolidate. DOC responds that "the decision of whether to grant a motion to consolidate is firmly within the superior court's discretion," that "any number of reasons . . . would warrant a decision not to consolidate," and that Smith and Anagick fail to articulate why not consolidating the cases was an abuse of discretion.

We agree with DOC. Alaska Civil Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it *may* order a joint hearing or trial of any or all the matters in issue in the actions; it *may* order all the actions consolidated; and it *may* make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.[66]

Here the superior court denied Smith and Anagick's motion to consolidate *Busby* with this case because it deemed the motion "premature," finding first that the filing fee in *Busby* had not yet been paid and second that the *Busby* complaint named additional defendants who would have to be served before a consolidation motion could be considered. Smith responded with an affidavit asserting that the filing fee had been "paid in full" along with a printout of the docket from *Busby* showing the filing fee payments completed just over a week before the court denied the motion to consolidate.

---

[65] Complaint, *Smith v. Busby*, No. 1JU-16-00630 CI (Alaska Super., May 18, 2016).

[66] Alaska R. Civ. P. 42(a) (emphasis added); *see also Baseden v. State*, 174 P.3d 233, 242 (Alaska 2008) ("Alaska case law places the decision to consolidate cases firmly within the discretion of the superior court judge.").

But Smith and Anagick offer no arguments that the court's decision was so manifestly unreasonable that it constituted an abuse of discretion;[67] nor do they assert that they were prejudiced by the failure to consolidate.[68] While the superior court's finding regarding the filing fee was erroneous, and while Smith and Anagick asserted that they had not received copies of the summons to serve on the *Busby* defendants, there is no indication in the record that they subsequently served the *Busby* defendants or renewed their motion to consolidate after doing so. Nor do Smith and Anagick explain why consolidation would be warranted, beyond their payment of the filing fee. It was therefore not an abuse of discretion for the superior court to deny the motion to consolidate.

## V.    CONCLUSION

Because Smith and Anagick received adequate process to protect any constitutional rights arising from their laundry jobs, and because we find no abuse of discretion in any of the superior court's procedural rulings, we AFFIRM the superior court's grant of summary judgment.

---

[67]    *See Lingley*, 373 P.3d at 511 (stating that abuse of discretion exists "when the decision on review is manifestly unreasonable" (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015))).

[68]    *See Limeres v. Limeres*, 367 P.3d 683, 687 (Alaska 2016) ("An abuse of discretion exists when a party has been deprived of a substantial right or seriously prejudiced by the [superior] court's ruling." (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014))).